1  VALKYRIE LAW GROUP, P.C.
2  HEATHER L. BLAISE, ESQ. (SBN 261619)
   1 N. State Street, Suite 1500
3  Chicago, IL 60602
   Telephone: 312-448-6602
4  Email: hblaise@valklaw.com
5
   Attorneys for Plaintiffs,
6  JOSEPH RAYHBUCK p/k/a FAT CODA STUDIOS,
   and WATCHDOG AI, INC.
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | JOSEPH RAYHBUCK p/k/a FAT CODA
   | STUDIOS, an individual, and              CASE NO: _____
12 | WATCHDOG AI, INC., a California
   | corporation,                            **COMPLAINT FOR COPYRIGHT**
13 |                                         **INFRINGEMENT**
14 |                    Plaintiffs,
15 |        v.                               **DEMAND FOR JURY TRIAL**
16 | WARNER BROS. DISCOVERY, INC., a
   | Delaware corporation,
17 |
18 |                    Defendant.
19

20        Plaintiffs JOSEPH RAYHBUCK p/k/a FAT CODA STUDIOS ("Rayhbuck")

21 and WATCHDOG AI, INC. ("Watchdog"), by and through their attorneys, Valkyrie

22 Law Group, P.C., as and for their Complaint for Copyright Infringement against

23 Defendant WARNER BROS. DISCOVERY, INC. ("Defendant"), state as follows:

24              <u>**NATURE OF THE ACTION**</u>

25        1.    This is an action to stop Defendant's rampant infringement of Rayhbuck's

26 copyrighted work "Laterals" (hereinafter the "Work") for commercial gain on its social

27 media pages, and to recover damages for Defendant's willful conduct.

28 //

---

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 (federal question).

3. This Court has personal jurisdiction over Defendant in that, among other things, Defendant does business in this Judicial District, and Plaintiff does business and is suffering harm in this Judicial District.

4. Venue is proper in this Judicial district pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(a).

## THE PARTIES

5. Plaintiff JOSEPH RAYHBUCK p/k/a FAT CODA STUDIOS ("Rayhbuck"), is an individual and citizen of California, domiciled in Castro Valley, California.

6. Rayhbuck is an accompanist, performer, and producer specializing in drums and percussion for live and session work, dance class accompaniment, and composition.

7. Plaintiff WATCHDOG AI, INC. ("Watchdog"), is California corporation with its principal place of business is located at 2261 Market Street, Suite 85449, San Francisco, California 94114.

8. Watchdog is in the business of monitoring the web for unauthorized and unlicensed use of user's intellectual property on platforms such as TikTok, Instagram, and Youtube and granting licenses for such uses.

9. Plaintiff Watchdog is Rayhbuck's exclusive agent with regard to enforcing Rayhbuck's rights as copyright holder, including copyright litigation, against unlicensed commercial usage of Rayhbuck's copyrighted works by third-party commercial businesses in order to promote, or otherwise in connection with, their brands or companies.

10. Plaintiff Watchdog is Rayhbuck's exclusive agent in connection with granting master use and synchronization licenses for Rayhbuck's copyrighted works.

11.    Defendant WARNER BROS. DISCOVERY, INC. ("Warner Bros.," "Defendant") is a Delaware corporation with its headquarters located at 230 Park Avenue South, New York, NY 10003.

12.    Defendant Warner Bros. is a multinational media and entertainment conglomerate formed through the 2022 merger of WarnerMedia and Discovery, Inc.

13.    It operates and controls a vast portfolio of television networks, film studios, and streaming services, including but not limited to HBO, CNN, Discovery Channel, Warner Bros. Pictures, and the HBO Max streaming platform.

14.    Defendant also operates a social media empire for its properties, with millions of followers across multiple social media platforms and accounts, including follower consumers in this judicial district.

15.    Defendant is responsible for social media accounts associated with Defendant's owned properties and their subsidiaries (the "Social Media Pages").

## FACTS RELEVANT TO ALL COUNTS

**A. TikTok**

16.    TikTok is a social media and entertainment platform that allows users to view, create, and share short videos.

17.    The TikTok App is one of the world's most popular social media platforms, with nearly 1.6 billion monthly active users across the globe.

18.    TikTok users can publish videos for others' viewing, including videos that they make themselves, and can apply filters and visual effects using the app's technology.

19.    TikTok also displays a curated feed of video content based on the users' viewing preferences, as well as advertisements.

20.    Users who create accounts are given personal profile pages that display their username and posted content.

21.    While TikTok's primary function involves video creation and viewing, it also contains a custom "in-app browser" that enables users to view external websites.

22.    TikTok directs users to these third-party websites in several different ways: 1) presents users with video ads in their feeds that include links to an advertised product or service's website; and 2) users who have at least 1,000 followers can add links to external websites on their personal profiles, a feature that influencers, businesses, and organizations routinely use to direct viewers to their brands and products.

23.    When users tap on these ads or links while using the TikTok, the in-app browser opens these links internally within the TikTok App instead of transferring them to a separate web browser on the user's device such as Google Chrome or Safari.

24.    When users create videos on TikTok, they have the ability to add recommended music through the in-app music library, which includes trending audio clips.

25.    TikTok trends are viral phenomena that spread across the TikTok platform, driven by user participation in challenges, hashtags, dance routines, memes, or audio clips.

26.    These trends often begin with individual creators who upload content featuring a particular theme, concept, or challenge.

27.    As users discover these posts, they may replicate or remix the content, making it their own by adding personal twists.

28.    The spread of these trends is facilitated by TikTok's algorithm, which prioritizes content based on engagement metrics (e.g., likes, comments, shares, and watch time).

29.    The more engaging the content, the more likely it is to appear on a user's "For You" page, thus reaching a broader audience.

30.    This creates a snowball effect, where trends quickly gain momentum and visibility across the platform.

31.    Corporations, seeking to capitalize on the popularity of trends, may participate in these viral challenges or meme formats by incorporating third-party

copyrighted works into their videos.

32.    TikTok trends frequently revolve around popular songs or audio clips, which may be copyrighted.

33.    TikTok provides a commercial library for corporations to use without obtaining additional licenses from rightsholders.

34.    The terms of TikTok's commercial library are as follows:

• These "Commercial Music Library Terms" (the "Terms") apply to the use of sounds (music and non-music) selected from TikTok's "Commercial Music Library" (the "CML"), whether via the TikTok mobile app, web application or TikTok Creative Center website. Sounds selected from the CML will be referred to in these Terms as "Commercial Sounds".

• In addition to the CML being accessible by individual users, the CML and Commercial Sounds are also made available to brands, businesses, commercial entities and advertisers (collectively, "Business Users") for inclusion in videos for posting on TikTok, which may include, but not be limited to the following types of uses: • The association of a Commercial Sound with a brand, logo or trademark or other brand identifying characteristics. • Advertising, marketing, endorsing, sponsoring or publicizing (including so-called paid "hashtag challenges") a product and/or service on TikTok.

These types of uses will be referred to as "Commercial Uses".

If you engage in Commercial Uses, you acknowledge and agree to the following terms:

• You may only post or share videos that include Commercial Sounds within TikTok and by using the sharing features made available to TikTok users. Commercial Uses outside of TikTok are not permitted and no rights are granted by TikTok for such uses. Any uses outside of

TikTok are subject to you obtaining separate permission and licensing the necessary rights directly from the Commercial Sound rights holder(s). These types of outside uses include, but are not limited to, posting videos on third party digital platforms and inclusion of Commercial Sounds in audio or audiovisual content on television, radio and in theatrical media.

• You are not permitted to make available, distribute, or perform the Commercial Sounds separately from the videos into which you have incorporated the Commercial Sound.

• You are not permitted to use Commercial Sounds in an illegal manner or in any way that violates the rights of third parties, or in connection with any content that is illegal or otherwise violates TikTok's "Terms of Service" (including any associated "Community Guidelines"). In addition, some of the Commercial Sounds may be subject to additional requirements and/or restrictions, as further specified in the CML. You agree to comply with these additional requirements when you use Commercial Sounds.

• Commercial Sounds are the only sounds made available on TikTok for Commercial Uses. Otherwise, no rights are granted to make Commercial Uses of any other sounds (music and non-music) on or through TikTok.

• Commercial Sounds designated as "Premium" ("Premium Tracks") may be subject to an additional fee for their use. The exact amount may vary and the calculation of any associated fee for use of a Premium Track will be displayed at the time you purchase the applicable ad inventory. Except as described in this paragraph, all other terms and conditions applicable to Commercial Sounds also apply to Premium Tracks.

• With respect to Commercial Uses by Business Users, each such Business User hereby grants to TikTok and its affiliates the right to provide data reporting to the rights holders of the Commercial Sounds used by the Business User in each instance. This data may include the number of views, creations, likes, followers, Business User platform account name, country of the Business User's home offices and industry in which the Business User operates, the campaign name(s) and Business User's targeted audience data, which may include, but may not be limited to, gender, personal interests and geo-location. Any data shared by TikTok pursuant to this paragraph will at all times be subject to all applicable privacy and data sharing laws and regulations.

• You (including Business Users) are responsible for any claims and disputes that arise from (i) your failure to adhere to and abide by these Terms, the "TikTok for Business Commercial Terms of Service" or TikTok's "Terms of Service"; (ii) your unauthorized use of Commercial Sounds (wherever or however accessed); and (iii) your unauthorized, unlicensed use of sounds contained in the non-commercial "General Music Library" made available to personal users of TikTok. In the event of any such claim, including any complaint, investigation, dispute, litigation or arbitration brought against TikTok and/or its affiliates, you shall indemnify and hold harmless TikTok and its affiliates from and against each such claim.

• If you access the CML or Commercial Sounds through the TikTok Creative Center web portal (and not via the TikTok mobile application), you must pay attention and adhere to the "Usable Placements" designation with respect to each Commercial Sound in order to select the appropriate Commercial Sound for your planned use. Commercial Sounds may only be used on designated platforms, which are listed in

the "Usable Placements" section of the web portal version of the CML. To use Commercial Sounds in videos on media or platforms other than the platforms listed under "Usable Placements", you must obtain separate permission from the rights holders, and you are responsible for such permissions and any associated license fees. Any platform not designated under the "Usable Placements" section should be considered not permitted for use of the Commercial Sound in question unless you first obtain the required consents and approvals from the applicable rights holder(s).

• If TikTok, at any time, loses the right, for any reason, to make available a particular sound that was previously available as a Commercial Sound in the CML, TikTok, in its sole discretion, may take down any videos (or any other associated audiovisual content) embodying the Commercial Sound in question or mute the audio so that the Commercial Sound is no longer audible when the video is played. TikTok has no liability to you or any third party with respect to the loss of rights associated with a particular Commercial Sound (and its removal from the CML), or the resulting take down or muting of videos embodying such Commercial Sound.

Commercial Music Library – User Terms, TIKTOK (2025), https://www.tiktok.com/legal/page/global/commercial-music-library-user-terms/en (last visited Sept. 26, 2025).

35.    While TikTok provides a music library for users to select from, corporations often bypass proper licensing arrangements for exclusive or unlicensed use of copyrighted audio in their videos.

36.    In repurposing user-generated content and/or influencer videos that feature copyrighted works, corporations often exploit content without obtaining the necessary rights to use such content.

37.    TikTok's Music Terms of Service provides in pertinent part:

TikTok offers its users a library of licensed music from which songs may be selected for inclusion in videos. If you include in your video a song that was not chosen from the licensed library, then you confirm that you are the creator of that music and/or that you have all the rights and permissions needed to use that music in your video. Except as expressly set out in these Music Terms, you acknowledge that no rights in the music—either in the sound recordings or the underlying compositions embodied in them—are licensed to you under the TikTok Terms of Service or these Music Terms.

[…]

Below we describe some ways that you may choose to include music in your videos. In short, you should only include music in a video if you are sure that you have the rights or permissions to do so.

• Select audio from the general music library. When you upload your video content to TikTok, you can select music from a list of music recordings in our TikTok music library, which we call Sounds. Sounds are made available to individual users to include in their videos, so long as the videos are only for personal entertainment and non-commercial purposes. You shouldn't use a music recording from Sounds for any commercial purpose–including associating the music with, or promoting, a brand or business–unless you have obtained the necessary rights to use the music in that manner.

• Select audio from the commercial music library. You can also select music from the TikTok Commercial Music Library, which we call Commercial Sounds. Unlike Sounds, Commercial Sounds are made available to brands, businesses, commercial entities, advertisers or other Platform users (including individuals) that may be using the

- 9 -

Platform for commercial purposes (collectively defined as a "Commercial User"). Music recordings selected from the Commercial Music Library can be used to promote a brand or for other commercial purposes. Your use of the Commercial Sounds is governed by the Commercial Music Library Terms here.

• Upload your own music. Finally, you can also upload audio from your own personal device, such as audio that contains music we've licensed for use on the Platform or your own original work, by including such music directly in your TikTok video ("Original Sounds"). Your use of Original Sounds is governed by the TikTok Terms of Service. **If you're a Commercial User, you should not use an Original Sound uploaded by another user. If you're a Commercial User and you upload an Original Sound to your video, you confirm that (i) you own all the rights to the music included in the video; or (ii) the music is otherwise permitted by law; or (iii) you have permission from all necessary rights holders to use the Original Sound on the Platform.**

[…]

Music is part of the TikTok experience. But, to use music on our Platform, you must follow a few rules.

• Non-commercial uses. Unless you've selected a sound from our list of Commercial Sounds, music should only be used for personal, non-commercial purposes. Any other use of music to sponsor, promote, co-brand or advertise or in a way that creates an association between the music and a brand, product, good or service is prohibited unless you have obtained separate permissions and all necessary rights.

• Short-form uses. Our global music license agreements may require us to place limits on the duration of music that can be used in your video.

While specific limitations vary, uses of music up to one minute in length are generally permitted.

• No alterations or modifications. You can not edit or alter the fundamental character of any copyrighted music, unless you created the underlying music or otherwise have the rights or permissions to do so.

• No stand-alone audio. You should not use music separately as stand-alone audio without an accompanying video.

• No illegal uses. Don't use music in an illegal manner, in connection with illegal content, or in violation of our Community Guidelines. In addition, music shouldn't be used in a political context or for political purposes unless you have separately obtained permission from all of the rights holders to do so.

• Sharing videos on third-party platforms. In some cases, you may be able to share TikTok videos to third-party platforms through our service. If you do share your TikTok video to a third-party platform, your TikTok video would be subject to the terms and conditions of that third-party platform.

Music Terms of Service, TikTok (2025) https://www.tiktok.com/legal/page/global/music-terms-eea/en (last visited Sept. 26, 2025) (emphasis added).

38.    Defendant is a Commercial User under the terms of the TikTok Music Terms of Service and was on notice that it was not entitled to use any TikTok Original Sound without first obtaining permission from all necessary rights holders.

**B. The Work**

39.    The Work entitled "Laterals" is a sound recording which embodies a musical composition from Plaintiff Rayhbuck's album called "Drums for Modern Dance Class (Horton Technique)," and was published on June 12, 2015.

40.    The Work was registered with the U.S. Copyright Office on October 28, 2024, Registration No. SR 1-016-157.

41.    Plaintiff's Work was used in a TikTok video posted by user @shelbysdanceact on February 9, 2023 as a licensed use by that non-commercial user through TikTok's Sounds, often referred to as the TikTok General Music Library.

42.    The February 9, 2023 @shelbysdanceact video depicts the user in a dance studio performing contemporary dance while the Work plays in the background.

43.    The video became viral and its sound featuring the Work was recommended in TikTok's in-app music library as a trending audio clip.

44.    The original video has over 740,400 views, and the original sound was used in over 49,500 videos as part of the TikTok trend.

45.    However, the Work is not available for commercial use as it does not appear in TikTok's Commercial Music Library.

**C. Defendant's Infringing Videos**

46.    Defendant, through its properties, participated in the TikTok trend using the Work.

47.    On October 22, 2024, Defendant's property, Warner Bros. UK, posted a TikTok video on its commercial TikTok page which included the Work (the "First Video").

48.    Warner Bros. UK has over 1,800,000 TikTok followers.

49.    Warner Bros. UK's video featuring the Work garnered 7,125 views as of September 26, 2025.

50.    On October 24, 2024, Defendant's property, Discovery, posted a TikTok video on its commercial TikTok page which included the Work (the "Second Video").

51.    Discovery has over 7,000,000 TikTok followers.

52.    Defendant's video featuring the Work garnered 51,100 views as of September 26, 2025.

53.    Defendant did not obtain any license or authority by Plaintiff Rayhbuck to use the Work in the TikTok videos posted on Defendant's properties, Warner Bros. UK and Discovery's commercial TikTok pages described above (hereinafter the

1 "Videos").

2 **COUNT I**

3 **DIRECT COPYRIGHT INFRINGEMENT AS TO THE FIRST VIDEO**

4     54.   Plaintiffs incorporate the preceding Paragraphs 1 through 53 of this

5 Complaint as if fully set forth herein.

6     55.   The Work is owned and/or controlled by Plaintiff Rayhbuck and is an

7 original, creative work and constitute copyrightable subject matter under the Copyright

8 Act.

9     56.   Rayhbuck owned and controlled the copyright to the Work during the

10 relevant times of Defendant's infringement.

11     57.   Defendant had access to but was not licensed by Plaintiff to use Plaintiff's

12 Copyrighted Works in the manner Defendant has used the Work.

13     58.   By its actions, Defendant's creation, posting, and distribution of the First

14 Video infringes Rayhbuck's copyright because Defendant: 1) reproduced the Work in

15 violation of 17 U.S.C. § 106 (1); 2)  prepared derivative works based upon the Work

16 in violation of 17 U.S.C. § 106(2); 3) distributed copies of the Work to the public by

17 sale or other transfer of ownership, or by rental, lease, or lending in violation of 17

18 U.S.C. § 106(3); 4) performed the Work publicly in violation of 17 U.S.C. § 106(4);

19 and/or 5) have displayed the Work publicly in violation of 17 U.S.C. § 106(5).

20     59.   Through these unauthorized uses, Defendant has unlawfully reproduced,

21 prepared a derivative work from and/or distributed the Work in violation of 17 U.S.C.

22 § 106 without any authorization, permission, license, or consent from Rayhbuck.

23     60.   Defendant's acts of infringement is knowing, deliberate, and in complete

24 disregard for Rayhbuck's rights.

25     61.   Defendant's conduct constitutes willful copyright infringement under 17

26 U.S.C. § 504(c)(2).

27     62.   As a direct and proximate result of Defendant's infringement of

28 Rayhbuck's copyright and exclusive rights under copyright, Plaintiffs are entitled to

their actual damages, including Defendant's profits directly and indirectly attributable to the infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or such other amounts as may be proper under 17 U.S.C. § 504(c).

63.    Plaintiff is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

## PRAYER FOR RELIEF AS TO COUNT I

WHEREFORE, Plaintiffs pray for judgment from this Honorable Court in Plaintiffs' favor against Defendant:

a) A declaration that Defendant has willfully infringed Plaintiff Rayhbuck's copyrighted Work in violation of the Copyright Act;

b) A permanent injunction requiring Defendant and its agents, employees, officers, attorneys, successors, licensees, partners and assignees, and all persons acting in concert with any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiff's rights protected by the Copyright Act pursuant to 17 U.S.C. § 502;

c) An order for impoundment of all copies made or used in violation of the exclusive rights of Plaintiff pursuant to 17 U.S.C. § 503;

d) An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. § 503;

e) Plaintiffs' actual damages and Defendant's profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial;

f) An order for an accounting and an award of Defendant's profits (including direct and indirect profits) pursuant to 17 U.S.C. § 504;

g) For pre-judgment and post-judgment interest at the applicable rate on any

- 14 -

1    monetary award made part of the judgment against Defendant; and

2    h) Any and all relief deemed just and appropriate by the Court.

3    ## COUNT II

4    **DIRECT COPYRIGHT INFRINGEMENT AS TO THE SECOND VIDEO**

5    64.    Plaintiffs incorporate the preceding Paragraphs 1 through 53 of this

6    Complaint as if fully set forth herein.

7    65.    The Work is owned and/or controlled by Plaintiff Rayhbuck and is an

8    original, creative work and constitute copyrightable subject matter under the Copyright

9    Act.

10    66.    Rayhbuck owned and controlled the copyright to the Work during the

11    relevant times of Defendant's infringement.

12    67.    Defendant had access to but was not licensed by Plaintiff to use Plaintiff's

13    Copyrighted Works in the manner Defendant has used the Work.

14    68.    By its actions, Defendant's creation, posting, and distribution of the

15    Second Video infringes Rayhbuck's copyright because Defendant: 1) reproduced the

16    Work in violation of 17 U.S.C. § 106 (1); 2)  prepared derivative works based upon the

17    Work in violation of 17 U.S.C. § 106(2); 3) distributed copies of the Work to the public

18    by sale or other transfer of ownership, or by rental, lease, or lending in violation of 17

19    U.S.C. § 106(3); 4) performed the Work publicly in violation of 17 U.S.C. § 106(4);

20    and/or 5) have displayed the Work publicly in violation of 17 U.S.C. § 106(5).

21    69.    Through these unauthorized uses, Defendant has unlawfully reproduced,

22    prepared a derivative work from and/or distributed the Work in violation of 17 U.S.C.

23    § 106 without any authorization, permission, license, or consent from Rayhbuck.

24    70.    Defendant's acts of infringement is knowing, deliberate, and in complete

25    disregard for Rayhbuck's rights.

26    71.    Defendant's conduct constitutes willful copyright infringement under 17

27    U.S.C. § 504(c)(2).

28    72.    As a direct and proximate result of Defendant's infringement of

- 15 -

1  Rayhbuck's copyright and exclusive rights under copyright, Plaintiffs are entitled to

2  their actual damages, including Defendant's profits directly and indirectly attributable

3  to the infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or

4  such other amounts as may be proper under 17 U.S.C. § 504(c).

5      73.    Plaintiff is irreparably harmed by the acts alleged herein and has no

6  adequate remedy at law.

7                  **<u>PRAYER FOR RELIEF AS TO COUNT II</u>**

8      WHEREFORE, Plaintiffs pray for judgment from this Honorable Court in

9  Plaintiffs' favor against Defendant:

10     a)  A declaration that Defendant has willfully infringed Plaintiff Rayhbuck's

11         copyrighted Work in violation of the Copyright Act;

12     b)  A permanent injunction requiring Defendant and its agents, employees,

13         officers, attorneys, successors, licensees, partners and assignees, and all

14         persons acting in concert with any one of them, to cease directly and

15         indirectly infringing, and causing, enabling, facilitating, encouraging,

16         promoting, inducing, and/or participating in the infringement of any of

17         Plaintiff's rights protected by the Copyright Act pursuant to 17 U.S.C.

18         § 502;

19     c)  An order for impoundment of all copies made or used in violation of the

20         exclusive rights of Plaintiff pursuant to 17 U.S.C. § 503;

21     d)  An order impounding records documenting the manufacture, sale, or

22         receipt of things involved in the acts of infringement pursuant to 17 U.S.C.

23         § 503;

24     e)  Plaintiffs' actual damages and Defendant's profits attributable to the

25         infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven

26         at trial;

27     f)  An order for an accounting and an award of Defendant's profits (including

28         direct and indirect profits) pursuant to 17 U.S.C. § 504;

COMPLAINT FOR COPYRIGHT INFRINGEMENT

g) For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendant; and

h) Any and all relief deemed just and appropriate by the Court.

## COUNT III

### VICARIOUS INFRINGEMENT

74. Plaintiffs incorporate the preceding Paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75. If Defendant is not directly liable for the infringing Videos on social media accounts of its properties, Defendant is, at the very least, vicariously liable for the infringing Videos posted and/or created by Warner Bros. UK and Discovery.

76. As described above, Defendant has the right, ability, and authority to control and supervise the creation and posting of videos created or posted by its properties.

77. Defendant has failed to exercise its right and ability to control and supervise the infringing activity of its properties.

78. As described above, Defendant receives a direct financial benefit from infringing videos posted by its properties, and from their use of Rayhbuck's sound recording.

79. Defendant's exploitation of the Work in the infringing videos saves Defendant the cost of a license, increases Defendant's sales and revenue, enhances the visibility of Defendant's properties and services, and drives users that would not otherwise view Defendant's social media content to its accounts and pages that promote Defendant's brands. Defendant's failure to take any action has caused its properties to continue to use Rayhbuck's sound recording without authorization.

80. Plaintiffs have been damaged, and will continue to be damaged, by Defendant's knowing, deliberate, and willful acts of vicarious infringement.

81. Plaintiffs are entitled to injunctive relief prohibiting Defendant from further acts of vicarious infringement.

82.    As a direct and proximate result of Defendant's vicarious infringement of Rayhbuck's copyright and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendant's profits directly and indirectly attributable to the infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or such other amounts as may be proper under 17 U.S.C. § 504(c).

<u>**PRAYER FOR RELIEF AS TO COUNT III**</u>

WHEREFORE, Plaintiffs pray for judgment from this Honorable Court in Plaintiffs' favor against Defendant:

a) A declaration that Defendant has willfully infringed Plaintiff Rayhbuck's copyrighted Work in violation of the Copyright Act;

b) A permanent injunction requiring Defendant and its agents, employees, officers, attorneys, successors, licensees, partners and assignees, and all persons acting in concert with any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiff's rights protected by the Copyright Act pursuant to 17 U.S.C. § 502;

c) An order for impoundment of all copies made or used in violation of the exclusive rights of Plaintiff pursuant to 17 U.S.C. § 503;

d) An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. § 503;

e) Plaintiffs' actual damages and Defendant's profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial;

f) An order for an accounting and an award of Defendant's profits (including direct and indirect profits) pursuant to 17 U.S.C. § 504;

g) For pre-judgment and post-judgment interest at the applicable rate on any

monetary award made part of the judgment against Defendant; and

h) Any and all relief deemed just and appropriate by the Court.

## COUNT IV

## CONTRIBUTORY INFRINGEMENT

83.     Plaintiffs incorporate the preceding Paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84.     If Defendant is not directly liable for the infringing Videos on social media accounts of its properties, Defendant is, at the very least, contributorily liable for the infringing Videos posted and/or created by Warner Bros. UK and Discovery.

85.     As described above, Defendant induced and/or materially contributed to the infringing Videos posted and/or created by Warner Bros. UK and Discovery.

86.     As described above, Defendant knew, or had reason to know, or was willfully blind that its paid properties used unlicensed copyrighted works in the infringing posts at issue because, among other things, Defendant's employees closely track and monitor all social media posts that tag or otherwise mention Defendant, or any of its properties, actively reviewed infringing content created by Defendant, and upon information and belief has received specific notices sent by or on behalf of other third-party content owners or the platforms themselves.

87.     To the extent that Defendant does not have actual knowledge, the systemic infringement by Defendant and its properties combined with Defendant's substantial investment in social media marketing generally, establishes that Defendant is aware of a high probability of infringement by the Defendant's properties, both consciously and intentionally.

88.     Defendant's conduct constitutes willful contributory copyright infringement.

89.     Plaintiffs have been damaged, and will continue to be damaged, by Plaintiff's acts of contributory infringement.

90.     Plaintiffs are entitled to injunctive relief prohibiting Defendant from

- 19 -

1  further acts of contributory infringement.

2      91.    As a direct and proximate result of Defendant's contributory infringement

3  of Rayhbuck's copyright and exclusive rights under copyright, Plaintiffs are entitled to

4  their actual damages, including Defendant's profits directly and indirectly attributable

5  to the infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or

6  such other amounts as may be proper under 17 U.S.C. § 504(c).

7                    **PRAYER FOR RELIEF AS TO COUNT IV**

8      WHEREFORE, Plaintiffs pray for judgment from this Honorable Court in

9  Plaintiffs' favor against Defendant:

10    a)  A declaration that Defendant has willfully infringed Plaintiff Rayhbuck's

11        copyrighted Work in violation of the Copyright Act;

12    b)  A permanent injunction requiring Defendant and its agents, employees,

13        officers, attorneys, successors, licensees, partners and assignees, and all

14        persons acting in concert with any one of them, to cease directly and

15        indirectly infringing, and causing, enabling, facilitating, encouraging,

16        promoting, inducing, and/or participating in the infringement of any of

17        Plaintiff's rights protected by the Copyright Act pursuant to 17 U.S.C.

18        § 502;

19    c)  An order for impoundment of all copies made or used in violation of the

20        exclusive rights of Plaintiff pursuant to 17 U.S.C. § 503;

21    d)  An order impounding records documenting the manufacture, sale, or

22        receipt of things involved in the acts of infringement pursuant to 17 U.S.C.

23        § 503;

24    e)  Plaintiffs' actual damages and Defendant's profits attributable to the

25        infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven

26        at trial;

27    f)  An order for an accounting and an award of Defendant's profits (including

28        direct and indirect profits) pursuant to 17 U.S.C. § 504;

COMPLAINT FOR COPYRIGHT INFRINGEMENT

g) For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendant; and

h) Any and all relief deemed just and appropriate by the Court.

### JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

DATED: September 26, 2025      Respectfully submitted,

**JOSEPH RAYHBUCK p/k/a FAT CODA STUDIOS and WATCHDOG AI, INC.**

  */s/  Heather L. Blaise*

HEATHER L. BLAISE, ESQ. (SBN 261619)

*Attorney for Plaintiffs*